UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

BRICKLAYERS INSURANCE AND WELFARE FUND, BRICKLAYERS PENSION FUND, BRICKLAYERS SUPPLEMENTAL ANNUITY FUND, BRICKLAYERS AND TROWEL TRADES INTERNATIONAL PENSION FUND, NEW YORK CITY AND LONG ISLAND JOINT APPRENTICESHIP AND TRAINING FUND, INTERNATIONAL MASONRY INSTITUTE, and JACK ARGILA, in his fiduciary capacity as Administrator and Chairman of Trustees, BRICKLAYERS LOCAL 1, INTERNATIONAL UNION OF BRICKLAYERS AND ALLIED CRAFT WORKERS, and BRICKLAYERS LABOR MANAGEMENT COMMITTEE,

**COMPLAINT**

Plaintiffs,

- against -

DANCO BUILDERS GROUP, MST GENERAL CONTRACTING RESTORATION, INC., WESTERN SURETY COMPANY, and PARAMVIR SINGH,

Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Plaintiffs, by their attorneys, Doar Rieck Kaley & Mack, complaining of defendants, Danco Builders Group ("Danco"), MST General Contracting Restoration, Inc. ("MST"), Western Surety Company ("Western"), and Paramvir Singh ("Singh"), allege as follows:

JURISDICTION AND VENUE

1. This Court has original jurisdiction over this action under 28 U.S.C. § 1331, in that plaintiffs' action is brought against Danco and Singh under federal statutes, specifically Sections 515, 404 and 409 of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1145, 1104 and 1109, for Danco's failure to make employee benefit fund contributions and for Singh's breaches of fiduciary duty, respectively. Subject matter jurisdiction

is specifically conferred on this Court pursuant to ERISA Sections 502(a)(2) and (3), and (g), 29 U.S.C. §§ 1132(a)(2) and (3), and (g).

2.  For the cause of action herein against Danco by plaintiff Bricklayers Local 1, International Union of Bricklayers & Allied Craft Workers ("Local 1") to recover unremitted dues checkoffs, subject matter jurisdiction is conferred on this Court pursuant to Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185.

3.  For the state common law cause herein against Singh for conversion, and against MST and Western for breach of payment bond, supplemental jurisdiction is conferred on this Court pursuant to 28 U.S.C. § 1367, in that the common law causes of action are so related to the claims herein within the Court's original jurisdiction that they form part of the same case and controversy.

4.  Venue is proper in the Eastern District of New York under Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), in that the plaintiff union benefit funds are administered in this district.

## PARTIES

5.  Plaintiffs, Bricklayers Insurance and Welfare Fund ("Welfare Fund") (of which the Vacation Fund is a part), Bricklayers Pension Fund ("Pension Fund"), Bricklayers Supplemental Annuity Fund ("Annuity Fund"), Bricklayers and Trowel Trades International Pension Fund ("IPF"), New York City and Long Island Joint Apprenticeship and Training Fund ("JATC"), and the International Masonry Institute ("IMI"), are each an "employee benefit plan" within the meaning of Section 3(3) of ERISA, 29 U.S.C. § 1002(3), a "multiemployer plan" within the meaning of Section 3(37) of ERISA, 29 U.S.C. § 1002(37), and a fiduciary within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A).

6.  Jack Argila ("Argila") is the Chairman of Trustees, unpaid Administrator and a fiduciary within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A), of the Welfare Fund, Pension Fund, Annuity Fund and the JATC (collectively referred to as the "Local 1 Funds"). He is also a trustee of the IMI.

7.  The trustees of the Local 1 Funds have authorized Argila to bring this action on their behalf, as have the trustees of the IPF and IMI.

8. As president of Local 1, Argila is authorized to sue to collect wage assignments that have not been remitted by employers to Local 1 and its parent, the International Union of Bricklayers & Allied Craft Workers ("I.U."). Argila is also a participant in and beneficiary of the Welfare Fund, Pension Fund, Annuity Fund, JATC, IPF and IMI (collectively referred to as the "Funds").

9. Local 1 is a labor organization within the meaning of Section 301 of the LMRA, 29 U.S.C. § 185.

10. The Labor Management Committee ("LMC") is established and maintained under Section 302(c)(9) of the LMRA, 29 U.S.C. § 186(c)(9).

11. Danco is, and at all times hereinafter mentioned was, an employer transacting business in New York and contracting to supply goods and services in New York.

12. MST is, and at all times hereinafter mentioned was, a general contractor maintaining offices and conducting business in New York.

13. Upon information and belief, at all times material hereto, Western was, and still is, a South Dakota corporation that is duly licensed and authorized by the Superintendent of Insurance of the State of New York to transact business as a Western in the State of New York. Western has filed in the office of the Superintendent of Insurance a power of attorney appointing the superintendent and his successor in office and authorized deputies, as its true and lawful attorney in and for this state, upon whom all lawful process in any proceeding against a contract delivered or issued for delivery or on a cause of action arising in this state may be served.

14. Upon information and belief, Singh is the owner and president of Danco.  Singh regularly transacts business in New York and contracts to supply goods and services in New York.  Further, and as detailed herein, Singh committed breaches of fiduciary duty under ERISA and the tort of conversion, causing injury to plaintiffs in New York.

## BACKGROUND

15. Danco and MST are a party to the Project Labor Agreement ("PLA") between the New York School Construction Authority ("SCA") and various construction unions, including Local 1. The PLA incorporates by reference the Local 1 collective bargaining agreement ("CBA").

16. Under the CBA, Danco agreed to make contributions at specified rates per hour worked by Local 1 bricklayers to pay for the cost of: (1) pension benefits provided by the Pension Fund, Annuity Fund and IPF; (2) medical benefits provided by the Welfare Fund; and (3) training provided by the JATC and IMI. Also under the CBA, Danco agreed to follow the terms of the trust documents of the Funds.

17. Under the CBA, Danco is further obligated to transmit after-tax deductions from employee wages at a specified rate per hour to the Vacation Fund, which is a component of the Welfare Fund and covered by ERISA.

18. The CBA also requires Danco to transmit after-tax hourly deductions from employee wages to the Funds for dues owed to Local 1 and the I.U.

19. Finally, Section 4 C of Article VII of the CBA provides that

> Any Employer signatory to this Agreement subletting work described in Article VII of this Agreement hereby guarantees contributions owed by such subcontractor to the Bricklayers Fringe Benefit Funds as required by this Agreement for work performed by the subcontractor under its contract with the Employer. In the event the subcontractor fails to make the required contributions to Bricklayers Fringe Benefit Funds, the Employer agrees to pay the contributions upon demand by the Bricklayers Fringe Benefits Funds, together with liquidated damages, interest, costs, and fees for which its subcontractor may be liable under this Agreement.

20. MST awarded Danco a subcontract for masonry work at a construction project located at P.S. 197 (the "P.S. 197 Project").

21. In accordance with the hours set forth in union shop steward reports ("SSRs"), Danco failed to make benefit contributions due and owing to the Funds, and wage deductions and contributions due and owing to Local 1 and the LMC, respectively, for hours worked by Local 1 bricklayers during the period of October through November 2019 (the "Delinquency Period").

22. As set forth in Section 4 C of Article VII of the CBA, in the event Danco failed to submit the required payments described in paragraphs 16 through 18 above for work performed at the P.S. 197 Project, MST guaranteed it would make contributions and remittances to the Funds, Local 1 and LMC on Danco's behalf, together with interest, liquidated damages, costs and fees.

23. Western furnished a labor and material payment bond on behalf of MST for the P.S. 197 Project.

### FIRST CAUSE OF ACTION AGAINST DANCO & MST FOR UNPAID CONTRIBUTIONS UNDER ERISA SECTIONS 1145 & 1132 and LMRA SECTION 301

24. Plaintiffs Argila, Local 1 and the Funds re-allege paragraphs 1 through 23 as if fully set forth herein.

25. In accordance with the hours set forth in the SSRs, Danco and MST owe the Funds $23,602.23 in unpaid contributions for hours worked by Local 1 bricklayers during the Delinquency Period.

26. Under the CBA and the applicable plan documents for the Funds, Danco and MST owe the Funds, in addition to the unpaid contributions, liquidated damages of 20% on the said unpaid contributions, plus interest on the unpaid contributions at the rate of 10% per annum.

### SECOND CAUSE OF ACTION AGAINST DANCO & MST FOR UNREMITTED DUES CHECKOFFS AND UNPAID CONTRIBUTIONS UNDER LMRA SECTION 301

27. Plaintiffs Local 1 and the LMC re-allege paragraphs 1 through 26 as if fully set forth herein.

28. In accordance with the hours set forth in the SSRs, Danco and MST owe Local 1 and the LMC $3,097.13 in unremitted dues checkoffs and unpaid contributions for hours worked by Local 1 bricklayers during the Delinquency Period.

29. In addition to the amount owed to Local 1 and the LMC for unremitted dues checkoffs and unpaid contributions, Danco and MST are liable under the CBA for interest thereon at the rate of 10% per annum.

### THIRD CAUSE OF ACTION AGAINST SINGH FOR BREACH OF FIDUCIARY DUTY UNDER ERISA SECTION 409

I.  Vacation Fund Component of Welfare Fund

30. Plaintiffs Argila and the Welfare Fund re-allege paragraphs 1 through 29 as if fully set forth herein.

31. The Welfare Fund includes a Vacation Fund component that provides vacation benefits to bricklayer participants. The participants pay for the Vacation Fund benefits by having after-tax monies deducted directly from their wages by their employer. The employers are obligated under the CBA to remit the Vacation Fund deductions to the Welfare Fund on a weekly basis.

32. Employee contributions to the Vacation Fund component of the Welfare Fund are "plan assets" of an ERISA employee welfare fund under 29 C. F. R. § 2510.3-102(a).

33. Singh manages the day-to-day activities and finances of Danco.

34. Singh is a fiduciary under Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A)(i), (iii), in that he exercises authority and control respecting management and disposition of plan assets and assets of the Funds at Danco.

35. In breach of his fiduciary duty, Singh failed to segregate the Vacation Fund deductions and remit them to the Welfare Fund. Instead, upon information and belief, Singh commingled the Vacation Fund assets with Danco's general assets and used the Vacation Fund assets to pay expenses and general creditors of Danco.

36. In accordance with the hours set forth in the SSRs, $3,577.71 in Vacation Fund contributions should have been deducted from the wages of Local 1 members and paid to the designated trustees of the Vacation Fund for hours worked by Local 1 bricklayers during the Delinquency Period.

37. By directing payment of general creditors and other corporate expenses of Danco, instead of making contributions due and owing to the Vacation Fund, Singh committed a series of breaches of fiduciary duty under Section 404 of ERISA, 29 U.S.C. § 1104, and thereby rendered himself personally liable under Section 409 of ERISA, 29 U.S.C. § 1109.

38. Singh is liable to the Vacation Fund for: (a) damages, including the unpaid $3,577.71 in Vacation Fund deductions and any losses to the Vacation Fund for each breach of Singh's fiduciary duty, (b) restitution to the Vacation Fund, including any profits made by Singh and Danco through use of Vacation Fund assets, and (c) such other equitable or remedial relief as the court may deem appropriate.

II.   International Pension Fund

39. Plaintiffs Argila and the IPF re-allege paragraphs 1 through 38 as if fully set forth herein.

40. Section 4.1 (a) of the Agreement and Declaration of Trust of the IPF provides: "Title to all monies paid into and/or due and owing the Trust Fund shall be vested in and remain exclusively in the Trustees of the Fund." Thus, employer contributions to the IPF are IPF assets.

41. In accordance with the hours set forth in the SSRs, Danco failed to make $1,762.16 in contributions to the IPF for hours worked by Local 1 bricklayers during the Delinquency Period.

42. By directing payment of general creditors and other corporate expenses of Danco, instead of making contributions due and owing to the IPF, Singh committed a series of breaches of fiduciary duty under Section 404 of ERISA, 29 U.S.C. § 1104, and thereby rendered himself personally liable under Section 409 of ERISA, 29 U.S.C. § 1109.

43. Singh is liable to the IPF for: (a) damages, including the unpaid $1,762.16 in contributions to the IPF and any losses to the IPF for each breach of Singh's fiduciary duty, (b) restitution to the IPF, including any profits made by Singh and Danco through use of IPF assets, and (c) such other equitable or remedial relief as the court may deem appropriate.

III.   Pension Fund

44. Plaintiffs Argila and the Pension Fund re-allege paragraphs 1 through 43 as if fully set forth herein.

45. Section 4.1 of the Pension and Annuity Plan of the Pension Fund provides: "Title to all monies paid into and/or owing the Fund shall be vested in and remain exclusively in the Trust of the Fund." Thus, employer contributions to the Pension Fund are Pension Fund assets.

46. In accordance with the hours set forth in the SSRs, Danco failed to make $5,313.17 in contributions to the Pension Fund for hours worked by Local 1 bricklayers during the Delinquency Period.

47. By directing payment of general creditors and other corporate expenses of Danco, instead of making contributions due and owing to the Pension Fund, Singh committed a series of breaches

of fiduciary duty under Section 404 of ERISA, 29 U.S.C. § 1104, and thereby rendered himself personally liable under Section 409 of ERISA, 29 U.S.C. § 1109.

48. Singh is liable to the Pension Fund for: (a) damages, including the unpaid $5,313.17 in contributions to the Pension Fund and any losses to the Pension Fund for each breach of Singh's fiduciary duty, (b) restitution to the Pension Fund, including any profits made by Singh and Danco through use of Pension Fund assets, and (c) such other equitable or remedial relief as the court may deem appropriate.

### IV.    Annuity Fund

49. Plaintiffs Argila and the Annuity Fund re-allege paragraphs 1 through 48 as if fully set forth herein.

50. Section 4.1 of the Supplemental Annuity Plan of the Annuity Fund provides: "Title to all monies paid into and/or owing the Fund shall be vested in and remain exclusively in the Trust of the Fund." Thus, employer contributions to the Annuity Fund are Annuity Fund assets.

51. In accordance with the hours set forth in the SSRs, Danco owes $5,019.48 in contributions to the Annuity Fund for hours worked by Local 1 bricklayers during the Delinquency Period.

52. By paying general creditors and other corporate expenses of Danco with Annuity Fund assets, instead of making contributions due and owing to the Annuity Fund, Singh committed a series of breaches of fiduciary duty under Section 404 of ERISA, 29 U.S.C. § 1104, and thereby rendered himself personally liable under Section 409 of ERISA, 29 U.S.C. § 1109.

53. Singh is liable to the Annuity Fund for: (a) damages, including the unpaid $5,019.48 in contributions to the Annuity Fund and any losses to the Annuity Fund for each breach of Singh's fiduciary duty, (b) restitution to the Annuity Fund, including any profits made by Singh and Danco through use of Annuity Fund assets, and (c) such other equitable or remedial relief as the court may deem appropriate.

### FOURTH CAUSE OF ACTION AGAINST SINGH FOR CONVERSION

54. Plaintiff Local 1 re-alleges paragraphs 1 through 53 as if fully set forth herein.

55. The monies deducted from Local 1 members' wages for union dues should have been segregated from Danco's and Singh's general assets.

56. Said monies should have been segregated and remitted to Local 1.

57. In accordance with the hours set forth in the SSRs, $2,936.93 in dues deductions of Local 1 members were not remitted to Local 1 for the Delinquency Period.

58. Singh failed to segregate and remit said dues deductions to Local 1. Instead, upon information and belief, Singh commingled them with Danco's general assets and used these Local 1 assets to pay Danco's expenses and general creditors.

59. Singh unlawfully converted these monies and is therefore personally liable to Local 1 for the $2,936.93 in unremitted dues checkoffs.

## FIFTH CAUSE OF ACTION AGAINST MST & WESTERN FOR BREACH OF PAYMENT BOND

60. Plaintiffs Argila, Local 1, the LMC and the Funds re-allege paragraphs 1 through 59 as if fully set forth herein.

61. Danco did not pay $26,699.36 in contributions and remittances that were owed to the Funds, Local 1 and the LMC for hours worked by Local 1 bricklayers at the P.S. 197 Project.

62. Local 1 bricklayers supplied the labor that was required for use in the performance of MST's contract for the P.S. 197 Project, and are therefore intended beneficiaries of the bond. Accordingly, MST and Western are required to pay Plaintiffs' claim against the bond for $26,699.36 in unpaid benefit contributions and unremitted wage deductions, together with interest assessed at the per annum rate of 9% under the New York Civil Practice Law & Rules.

## SIXTH CAUSE OF ACTION AGAINST DANCO FOR INJUNCTIVE RELIEF UNDER ERISA SECTION 1132

63. Plaintiffs Argila, Local 1, the LMC and the Funds re-allege paragraphs 1 through 62 as if fully set forth herein.

64. As provided in the CBA, plaintiffs are entitled to conduct an audit for the Delinquency Period and all periods thereafter.

65. Pursuant to the CBA and the plan documents of the Funds, Danco is required, *inter alia*, to file certain employer contribution reports with the Funds.

66. Danco is also required to permit and cooperate with the Funds in the conduct of audits of defendants' books and records including, but not limited to, producing payroll, payroll ledgers, computer payroll printouts, W-2 forms, quarterly federal payroll tax returns (forms WRS-2 and WRS-30), annual federal tax returns, cash disbursements journals, purchase journals, 1099 forms, New York and New Jersey employment records, insurance company reports, supporting checks, ledgers, vouchers and any and all other items concerning payroll. This production includes any certified payrolls of Danco and of any subcontractors it retained, and copies of all contracts between Danco and any subcontractors it retained to perform work on Local 1 projects. These requirements are for the purpose of ascertaining the amount of fringe benefits contributions owed to the Funds, contributions owed to the LMC, and dues owed to Local 1 from Danco, and of verifying the accuracy of the employer contribution reports, if filed.

67. Plaintiffs seek any and all unpaid contributions for periods after the period covered by an audit, including unpaid contributions accruing during the pendency of this action and any amounts found to be due and owing in connection with an updated audit of Danco's books and records.

68. Plaintiffs also seek any and all unremitted dues checkoffs for periods after the period covered by an audit, including unremitted dues checkoffs accruing during the pendency of this action and any amounts found to be due and owing in connection with an updated audit of Danco's books and records.

69. In the absence of such an audit, plaintiffs would suffer irreparable harm. Without an audit, plaintiffs cannot accurately determine the full amount owed by Danco.

70. Plaintiffs have no adequate remedy at law.

71. Accordingly, plaintiffs are entitled to an order requiring Danco to permit and to cooperate with plaintiffs in the conduct of an audit of Danco's books and records, and to pay any delinquencies shown to be due as a result of such audit.

DEMAND FOR RELIEF

WHEREFORE, Plaintiffs demand Judgment as follows:

I. In favor of Argila, Local 1 and the Funds, and against Danco under ERISA and the LMRA on the First Cause of Action as follows:

A. For unpaid contributions owed to the Funds, in the amount of $23,602.23, plus unpaid contributions for periods following the Delinquency Period (ERISA Section 502(g)(2)(A));

B. For interest on unpaid contributions at the per annum rate of ten percent (10%) (ERISA Section 502(g)(2)(B));

C. For 20% liquidated damages assessed on unpaid contributions owed to the Funds (ERISA Section 502(g)(2)(C)(ii));

D. For costs of an audit pursuant to the CBA;

E. For the costs and disbursements of this action (ERISA Section 502(g)(2)(D));

F. For attorneys' fees and costs of this action (ERISA Section 502(g)(2)(D)); and

G. Such other legal or equitable relief as this Court deems appropriate, including an order that Danco be directed to cooperate in the conduct of an audit of Danco's books and records (ERISA Section 502(g)(2)(E)).

II. In favor of Local 1 and the LMC, and against Danco, on the Second Cause of Action under the LMRA as follows:

A. For unremitted dues owed Local 1 and unpaid contributions owed the LMC in the amount of $3,097.13, plus unremitted dues checkoffs and unpaid contributions for periods following the Delinquency Period;

B. For interest at the rate of ten percent (10%) per annum on said delinquent dues checkoffs and contributions owed to Local 1 and the LMC;

C. For the court costs and disbursements of this action; and,

D. For attorneys' fees.

III. In favor of Argila, the Welfare Fund, IPF, Pension Fund and Annuity Fund, and against Singh, on the Third Cause of Action for breaches of fiduciary duty under Section 409 of ERISA, 29 U.S.C. § 1109 as follows:

A. For damages, including $15,672.52 in unpaid contributions to the Funds and for losses to the Funds for each breach of Singh's fiduciary duty, including interest on the unpaid contributions;

B. For restitution to the Funds, including any profits made by Singh and Danco through use of assets of the Funds; and,

C. For such other equitable or remedial relief as the court may deem appropriate.

IV. In favor of Local 1, and against Singh, on the Fourth Cause of Action for Conversion as follows:

A. For damages in the amount of $2,936.93;

B. For interest on the monies converted; and,

C. For the costs and disbursements of this action.

V. In favor of Argila, Local 1, the LMC and the Funds, and against MST and Western, on the Fifth Cause of Action pursuant to the CBA as follows:

A. For damages pursuant to the labor and materials payment bond that was issued in connection with the P.S. 197 Project in the sum of $26,699.36, which includes unpaid benefit contributions and unremitted wage deductions;

B. For interest assessed at the per annum rate of 9% under the CPLR.

VI. In favor of Argila, Local 1, the LMC and the Funds, and against Danco, on the Sixth Cause of Action pursuant to the CBA as follows:

A. For an order directing Danco to file employment contribution reports and to submit to an audit in accordance with the CBA.

Dated:    New York, New York         DOAR RIECK KALEY & MACK
          October 24, 2021

                                     By: _____
                                     Michael Minnefor, Esq.
                                     217 Broadway, Suite 707
                                     New York, New York 10007
                                     (212) 619-3730
                                     *Attorneys for plaintiffs*